IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHARRODRICK DUNN                                                                                      PLAINTIFF

       v.                            Civil No. 1:07-cv-01005

SHERIFF JAMES ROBINSON;
JAIL ADMINISTRATOR DAVID
OLIVER; and JAILER DEBRA BAKER                                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

      Plaintiff, Sharrodrick Dunn (hereinafter "Plaintiff" or "Dunn"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

      Dunn is currently incarcerated in the Arkansas Department of Correction in the Varner Unit located in Grady, Arkansas. He contends his constitutional rights were violated while he was incarcerated at the Ashley County Detention Center in Hamburg, Arkansas. Specifically, he contends his rights were violated in the following ways: (1) by his placement in administrative or disciplinary confinement without notice and an opportunity to be heard; (2) by the conditions to which he was subjected while confined to administrative or disciplinary segregation; (3) by David Oliver's refusal to complete his *in forma pauperis* application; and (4) by David Oliver's threatening to file criminal charges against him in retaliation for filing a civil rights complaint.

      Defendants filed a motion for summary judgment (Doc. 12).[1] To assist Dunn in responding to the motion, I propounded a questionnaire (Doc. 15). Dunn was directed to respond by February 13, 2008. On February 12th, the order and questionnaire were returned with a notation that Dunn was now

---

[1] The docket numbers for this case are referenced by the designation "(Doc. ___)."

at the Varner Unit. A change of address was entered for Dunn and the order and questionnaire was resent to Dunn at the new address. On February 19th, Defendants filed a motion to dismiss based on Dunn's failure to file a timely response to the questionnaire (Doc. 16). On February 25th, Dunn's response to the questionnaire (Doc. 18) was filed. The summary judgment motion is now ready for decision.

## I. Background

Dunn was booked into the Ashley County Detention Center (ACDC) on August 25, 2006. *Plaintiff's Response* (Doc. 18) (hereinafter *Resp.*) at ¶ 1(A). He was being held solely because of pending criminal charges. *Id.* at ¶ 1(B). He remained incarcerated there until transferred to the Arkansas Department of Correction (ADC) on September 13, 2007. *Id.* at ¶ 2.

David Oliver was employed by the Ashley County Sheriff's Department as the jail administrator of the ACDC from January 3, 2005, until August 18, 2006. *Resp.* at ¶ 3. Oliver was re-hired as jail administrator on October 6, 2006, and worked in that capacity until December 31, 2006. *Id.* As jail administrator, Oliver was responsible for the day-to-day operation and administration of the detention center. *Id.* at ¶ 4.

While confined to the ACDC, Dunn was in segregation for disciplinary reasons more than three times. *Resp.* at ¶ 5. It is a violation of ACDC policy for an inmate to refuse to follow instructions given by jailers. *Id.* at ¶ 6. According to Oliver, before any disciplinary action was imposed on Dunn, including disciplinary segregation, he was always notified it was a violation of jail policy to refuse to follow the instruction of a jailer and given an opportunity to tell his version of the facts. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 5. Dunn maintains Oliver never gave him a chance to explain his version of the facts. *Resp.* at ¶ 7.

On September 18, 2006, Jailer Michelle Brewer let Dunn out of his cell so he could take a shower. *Resp.* at ¶ 8(A). According to Dunn, Brewer asked if he, Dunn, wanted to volunteer to pick up trays. *Id.* at ¶ 8(C). Dunn states the jailers would ask if you wanted to pick up trays but it was not required. *Id.* at ¶ 8(B).

According to Oliver, Brewer notified him that Dunn had refused to follow the instructions that she had given him when she let him out of his cell to shower. *Defts' Ex.* 1 at ¶ 6. Oliver asserts Dunn was notified that refusal to follow a jailer's instructions was a violation of policy, given a chance to explain, and that after Oliver listened to both sides of the story, it was determined Dunn violated detention center policy. *Defts' Ex.* 1 at ¶ 8. Dunn maintains Oliver did not give him a chance to explain. Instead, Dunn states Oliver told him "the next 7 days where going to be the worst 7 days in my life." *Resp. at* ¶ 8(F).

Dunn was placed in disciplinary segregation. The disciplinary segregation cells include a bunk with a mattress, a stool bolted to the floor, and sink with running tap water. *Defts' Ex.* 1 at ¶ 10. Dunn indicates he did not have a mattress, a blanket, or clothes. *Resp.* at ¶ 9(A). Oliver maintains the temperature of the ACDC is maintained at seventy degrees. *Defts' Ex.* 1 at ¶ 10. However, Dunn asserts that the temperature in segregation is "entirely different from the temperature in the other barracks." *Resp.* at ¶ 9(B). He maintains the "temperature in segregation is extremely cold." *Id.*

While Oliver was jail administrator, he has found that many of the inmates are initially very upset at being placed in disciplinary segregation and often attempt to cause harm to themselves and destroy jail property. *Defts' Ex.* 1 at ¶ 11. Incidents include inmates using their clothing to clog and flood toilets or to attempt to hang themselves or choke themselves unconscious. *Id.* For this reason, inmates placed in disciplinary segregation have their outer garments temporarily removed until it is established that the inmate is unlikely to attempt to use his clothing to harm himself or destroy jail property. *Id.*

Dunn points out that he never flooded his cell, was not on suicide watch, and did not destroy any property. *Resp.* at ¶ 10(C). Dunn asserts his outer garments were not returned to him until the seventh day which was the day he was released from disciplinary segregation and returned back to housing #1. *Id.* at ¶ 11(B). During this period of time, he claims he had nothing to cover up with. *Id.* at ¶ 11(C).

He also claims he did not have access to basic hygiene items. *Resp.* at ¶ 13. He received three meals a day. *Id.* at ¶ 14. The cell had running water. *Id.* There was sufficient room to exercise. *Id.* They brought him something to drink with his dinner. *Id.* However, he did have access to tap water in between meals. *Id.* at ¶ 31(B). The cell had two bunks, a table, a stool, and a toilet. *Id.* at ¶ 30.

Dunn was again placed in disciplinary segregation on October 19th. *Resp.* at ¶ 15. He was advised he was being placed in segregation for violating the jail rules and given an opportunity to explain his version of the facts. *Id.* at ¶ 16. He was placed in segregation by Jailer Josh Polock and Oliver. *Id.* at ¶ 19. Dunn remained in segregation only two days. *Id.* at ¶ 18. He does not recall if he was allowed to keep his outer garments during this placement in segregation. *Id.* at ¶ 17.

Dunn was again put in segregation on November 15th for a violation of the jail rules. *Resp.* at ¶ 20. Although Oliver contends Dunn was given notice he had violated the rules of the jail and an opportunity to give his side of the story, *see Defts' Ex.* 1 at ¶ 9, Dunn indicates he cannot recall whether he received notice and an opportunity to be heard or not. *Resp.* at ¶ 21.

Dunn was not allowed to keep his outer garments this time. *Resp.* at ¶ 22. He was without his clothing for two days. *Id.* He had no articles of clothing or anything he could cover up with. *Id.* at ¶ 23. He does not recall who placed him in segregation on this occasion. *Id.* at ¶ 24. He remained in segregation two days. *Id.* at ¶ 25.

Dunn also maintains Oliver denied him access to the courts. Dunn was asked to explain this claim. Dunn replied: "David Oliver denied me access to the court because he refused to sign the I.F.P. forms an threatening to have criminal charges filed on me if I continued to go threw with the lawsuit. I waited until he resigned before I got the forms signed." *Resp.* at ¶ 26. With respect to the threatened criminal charges, Dunn indicates on November 21st Oliver stated that if Dunn continued with the "lawsuit" Oliver was going to have "some extra charges" filed on Dunn. *Id.* at ¶ 27(A). No one else was present during this conversation. *Id.* at ¶ 27(B).

Dunn indicates Oliver prevented him from sending in the IFP forms because he refused to sign them. *Resp.* at ¶ 27(E). Dunn did not miss any deadlines for filing any documents with the court. *Id.* at ¶ 27(F).

## II.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  Discussion

Defendants have now moved for summary judgment. First, Defendants contend they are entitled to summary judgment because Dunn failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA). Second, with respect to the disciplinary actions against Dunn, Defendants argue before any disciplinary segregation was imposed on Dunn he was provided with notice of the rule violation and afforded an opportunity to explain his version of the facts. Thus, Defendants contend they are entitled to summary judgment on this claim. Third, with respect to his conditions of confinement claims, Defendants maintain these claims are barred by the

physical injury requirement of the PLRA.  Defendants also contend Dunn's conditions of confinement claims fail because he has presented no evidence that he was deprived of a single, identifiable human need.  Finally, Defendant Oliver denies that he violated Dunn's constitutional right of access to the courts or retaliated against him.

### A. Exhaustion of Administrative Remedies

As amended by the Prison Litigation Reform Act (PLRA),  42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Supreme Court has held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 534, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  In *Booth v. Churner*, 532 U.S. 731, 738-39, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001), the Court held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought."  *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001).  Further, the term "administrative remedies" has been held to encompass remedies not promulgated by an administrative agency.  *Concepcion v. Morton*, 306 F.3d 1347, 1352 (3d Cir. 2002).  Specifically, it has been held that a grievance procedure contained in a handbook constitutes an available administrative remedy within the meaning of § 1997e(a).  *Conception*, 306 F.3d at 1352.  "If an inmate fails to exhaust one or more discrete claims raised in a § 1983 complaint, the PLRA requires only that the unexhausted claim or claims be dismissed–it does not require that the complaint be dismissed it its entirety." *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007)(*citing Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 923, 166 L. Ed. 2d 798 (2007)).

In this case, Dunn maintains he did submit grievances about his placement in disciplinary segregation and the conditions under which he was confined in disciplinary segregation. *Resp.* at ¶ 28(A). However, he asserts he never received any response to these grievances. *Id.* In this regard, I note that Dunn attached to his complaint (Doc. 1) a handwritten document entitled "grievance appeal" dated December 1, 2006, and addressed to Sheriff Robinson in which Dunn states he submitted a grievance two weeks ago about the unconstitutional "practices and conditions" that are taking place at this jail, especially what's going on in 'segregation.'" I believe there is sufficient evidence Dunn exhausted his administrative remedies with respect to his placement in disciplinary segregation and the conditions under which he was confined there.

With respect to the denial of access to courts claim and retaliation claim, Dunn concedes he submitted no grievances regarding Oliver refusing to fill out his IFP form or his attempt to "blackmail" Dunn into not filing this lawsuit. *Resp.* at ¶ 28(B). Defendants are therefore entitled to dismissal of those claims based on Dunn's failure to exhaust his administrative remedies.

### B. Due Process–Notice and Opportunity to Be Heard

Under the Due Process Clause of the United States Constitution, a pretrial detainee may not be punished prior to an adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "We [therefore] begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged." *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999). *See also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Pretrial detainees are presumed innocent and may not be punished."). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537. In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express

intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002)(citations omitted). If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

In *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit stated:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons. Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision. Or suppose, . . . that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk. Again, no hearing would be required. Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities. As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing. . . . In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

*Id.,* 286 F.3d at 438. *See Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment. . . . Regardless of whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lock-up area if he does not work, the detention amounts to punishment.").

The Supreme Court has outlined procedures correctional facilities must follow to conduct impartial due process hearings on a disciplinary matter. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66, 570, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The procedures include: written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and the reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *See also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Although Oliver asserts by affidavit that in each instance Dunn was notified that refusing to follow instructions was a violation of policy and afforded an opportunity to tell his side of the story, Dunn denies being afforded this opportunity on September 18th. *See Resp.* at ¶¶ 8(E) & ¶ 8(F). Moreover, there is nothing in the summary judgment record that suggests the Defendants complied with the requirements of Due Process with respect to the September 18th disciplinary confinement. For instance, the record contains no disciplinary action form or similar document. I therefore find there are genuine issues of fact that preclude summary judgment in their favor on this claim.

### C. *The Physical Injury Requirement of the PLRA*

Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA), provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Defendants argue that because Dunn does not allege that he suffered any physical injury as a result of the conditions under which he was confined while in administrative or disciplinary segregation, § 1997e(e) bars his action. I disagree. Section 1997e(e) merely limits a prisoner's recovery in the absence of physical injury. It does not bar the cause of action. *See Royal v. Kautzky*, 375 F.3d

720, 723 (8th Cir. 2004)(discussing § 1997e(e)'s limitation on damages and its application to all prisoner lawsuits). Even in the absence of a physical injury, a plaintiff may recover nominal damages and seek declaratory and injunctive relief where appropriate. *Id.* The lack of physical injury is not an absolute bar to the cause of action.

### D. Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875

(citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. The first time Dunn was in disciplinary segregation he was there seven days. *Resp.* at ¶ 12. The second and third times he was assigned to disciplinary segregation Dunn spent two days there. *Resp.* at ¶¶ 18 & 22. In disciplinary segregation Dunn contends the cell temperature was extremely cold, he did not have his outer garments, he had nothing to cover up with, he had no mattress or blanket, and he had no access to basic hygiene items. *Id.* at ¶ 9(B), ¶ 11(A), ¶ 11(C), ¶ 13, ¶ 22, ¶ 23. Dunn received three meals a day, the cell had a sink with running tap water, a toilet, a table, and sufficient room to exercise. *Id.* at ¶ 9(C), ¶ 14 & ¶ 30. Dunn suffered no physical injury as a result of the conditions he was subjected to. *Id.* at ¶ 29.

I conclude there are no genuine issues of fact as to whether the conditions Dunn was exposed to were sufficiently severe to establish an Eighth Amendment violation. With respect to his exposure to cold temperatures, Dunn alleges only that the temperature in his cell was extremely cold. Defendants have by affidavit stated that the temperature of the "entire jail facility (including disciplinary segregatiion)" is always maintained at 70 degrees. Dunn in response only makes the conclusory allegation that the disciplinary segregation cell was "extremely cold." He does not attempt to quantify

this for the court. *Resp.* at ¶ 9(A). He does not maintain he suffered any medical or physical injuries as a result of his exposure to the cold. *Id.* at ¶ 29. He does not maintain he was unable to eat, drink, or exercise because of his exposure to the cold. *See e.g., Chandler v. Crosby,* 379 F.3d 1278 (11th Cir. 2004)(considering duration and severity of temperature variation as well as impact on inmate). I therefore find Defendants entitled to summary judgment on this claim.

### IV. Conclusion

For the reasons stated, I recommend the Defendants' motion to dismiss (Doc. 16) be **DENIED**. Further, I recommend Defendants' motion for summary judgment (Doc. 12) be **GRANTED** in part and **DENIED** in part. Specifically, I recommend that the motion be **GRANTED** with respect to Dunn's claim that he was subjected to unconstitutional conditions of confinement. I further recommend that Dunn's claims that he was denied access to the courts and retaliated against be dismissed without prejudice for failure to exhaust his administrative remedies. Finally, I recommend that the Defendants' motion for summary judgment be **DENIED** with respect to Dunn's claim that he was denied Due Process prior to being placed on disciplinary segregation on September 18, 2006.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **29th day of February 2008.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE